[Cite as *State v. Smith*, 2022-Ohio-371.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 20CA3934 |
| v. | : | |
| HENRY DEANDRE SMITH, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James H. Banks, Dublin, Ohio, for appellant.[1]

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-2-22
ABELE, J.

{¶1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Henry Deandre Smith, defendant below and appellant herein, guilty of:

---

[1] Attorney Michael H. Mearan initially represented appellant. Later, Attorney Banks entered a notice of appearance as counsel for appellant. On July 24, 2020, Banks filed a motion to withdraw. The trial court granted Banks' request to withdraw and appointed Attorney Gene Meadows to represent appellant.

(1) trafficking in heroin in violation of R.C. 2925.03(A)(2);[2]

(2) possessing heroin in violation of R.C. 2925.11(A); and (3)

possessing criminal tools in violation of R.C. 2923.24(A).

After the trial court merged the possession offense with the

trafficking offense, the court sentenced appellant to serve an

eight-year prison term.  The court also sentenced appellant to

serve 180 days in jail for possessing criminal tools, but

ordered that sentence to be served concurrently with the

trafficking offense.

{¶2}    Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ALLOWING THE
IMPROPER INTRODUCTION OF EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE DEFENDANT'S CONVICTIONS ARE AGAINST THE
MANIFEST WEIGHT AND SUFFICIENCY OF THE
EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"DEFENDANT SMITH'S CONVICTIONS ARE
CONTRADICTORY ACCORDING TO THE JURY VERDICTS
SUCH TO REQUIRE REVERSAL."

---

[2] The trial court's sentencing entry and verdict form
contain a clerical error.  Both recite the offense as R.C.
2925.03(A)(1).  The trial court, however, amended the indictment
to charge R.C. 2925.03(A)(2).

FOURTH ASSIGNMENT OF ERROR:

"THE DEFENDANT WAS DENIED EFFECTIVE
ASSISTANCE OF COUNSEL SUCH THAT HE IS
ENTITLED TO A NEW TRIAL."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN SENTENCING THE
DEFENDANT."

{¶3} During the late-night hours of August 10, 2018, Ohio State Highway Patrol Trooper Nick Lewis stopped a black sport-utility vehicle for following a vehicle too closely, for making an unexpected lane change, and for driving 40 miles per hour in a 55 mile-per-hour speed zone. During the ensuing traffic stop, Lewis and another trooper discovered approximately 57 grams of heroin stuffed inside the lining of the backside of the driver's seat. The troopers questioned the three occupants, Carvion McKee, Ernest Whitehead, and appellant, and all stated they did not know that the vehicle contained heroin. The troopers then allowed the occupants to leave and advised them that the prosecutor's office likely would present the matter to a grand jury.

{¶4} On August 22, 2019, a Scioto County Grand Jury returned indictments that charged appellant, Whitehead, and McKee with trafficking in heroin in violation of R.C. 2925.03(A)(1), possessing heroin in violation of R.C.

2925.11(A), and possessing criminal tools in violation of R.C. 2923.24(A).  Appellant and Whitehead entered not guilty pleas.[3]

{¶5}   On April 23, 2020, appellant filed a motion to suppress the evidence discovered during the traffic stop and vehicle search.  Appellant asserted that the trooper lacked a lawful basis to stop and search the vehicle.

{¶6}   At the July 23, 2020 hearing, appellant's counsel, Attorney Banks, indicated that the parties had agreed to resolve the case, but that appellant recently changed his mind. Apparently, the state offered to reduce the first-degree felony offense, to recommend a two-year prison term, and agree not to object to judicial release.  The trial court questioned appellant regarding his decision to reject the plea offer and appellant indicated that he did not believe that he could "sign away [his] freedom for something" he does not support.  The court explained the maximum penalties it could impose and allowed appellant to again discuss the matter with counsel.

{¶7}   After appellant again discussed the plea offer, counsel informed the trial court that appellant wished to reject the state's offer.  Attorney Banks also asked the court to allow him to withdraw as counsel.  After the court granted Banks'

---

[3] According to the state, McKee later entered a guilty plea.

motion to withdraw, the court appointed Attorney Gene Meadows to represent appellant. Subsequently, appellant withdrew his motion to suppress evidence.

{¶8} The morning of trial, the state filed a motion to amend the indictment. The state asserted that the indictment incorrectly recited the trafficking offense in terms of R.C. 2925.03(A)(1), rather than R.C. 2925.03(A)(2). The prosecutor explained that the amendment did not change the name of the offense or the penalty, and that the case "always [has] been a transport, deliver, shipment type of case."

{¶9} Whitehead's counsel did not object to the motion to amend the indictment and agreed that the amendment would not change Whitehead's defense strategy. The court asked Whitehead whether he concurred, and Whitehead responded, "[y]es."

{¶10} Appellant's counsel likewise stated that "the case laws [sic] clear on this." Appellant's counsel further stated, "[w]e can tell by reading the discovery that it was a transport * * * case." Appellant also indicated that the amendment would not change the defense strategy. The trial court thus granted the state's motion to amend the indictment to allege a violation of R.C. 2925.03(A)(2).

{¶11}  At trial, Trooper Lewis testified that around 11:30 p.m. on August 10, 2018, he noticed a black vehicle "tailgating a lead vehicle."  Lewis followed the vehicle and noticed a change from the right lane to the left lane and speed at 40 miles per hour in a 55-mile-per-hour zone.  At this point, Lewis stopped the vehicle and asked the driver for identification. McKee sat in the driver's seat, appellant who had rented the vehicle, sat in the front passenger seat, and Whitehead in the left middle row, directly behind McKee.  Lewis learned that all three occupants are Michigan residents.

{¶12}  After Trooper Lewis asked McKee to exit the vehicle, they walked to the cruiser.  Lewis stated that he asked McKee to exit the vehicle as part of his drug interdiction protocol and to check on the status of his well-being.  Lewis related that, when a vehicle is traveling 40 miles per hour in a 55-mile-per-hour zone, "there's typically a – a problem."  Lewis indicated he thus instructed McKee to exit the vehicle so Lewis could "try to figure out what was going on with him."  Lewis explained he "had planned on placing [McKee] in the back of the cruiser while [he] checked [McKee's] driver's license and just talk[ed] to him about why he was driving erratically."  Because highway patrol policy is to conduct pat-down searches of individuals before

placing them in cruisers, Lewis asked McKee if he could conduct a pat-down search. Lewis indicated that McKee agreed to the search.

{¶13} As Trooper Lewis started to conduct the pat-down search, he told McKee to keep his hands out of his pockets. McKee, however, disobeyed that instruction and "the first thing [McKee] does is takes his left hand[,] puts it in his pocket and pulls out something in his – his fist." Lewis noticed that McKee's fist was "balled up." Lewis asked McKee what he had in his hand and, rather than answering, McKee "shove[d his hand] back down the front of his pants." Lewis then "grab[bed]" McKee and "put him against the – the rear of the vehicle." As Lewis handcuffed McKee, he noticed "a plastic baggie fall[] from his chest to the ground." The plastic bag contained "a small amount of marijuana residue." At this point, Lewis requested backup assistance.

{¶14} After Ohio State Highway Patrol Trooper Matt Lloyd responded to the call for backup, he removed appellant, the front-seat passenger, patted him down for weapons, and placed him in the rear of Trooper Lewis' cruiser with McKee. Then, the troopers removed Whitehead, patted him down, and placed him in the rear of Lloyd's cruiser. Lewis explained that the troopers

removed the occupants because they knew that they would search the vehicle based upon the discovery of marijuana residue.

**{¶15}** As Trooper Lewis began to search the vehicle, he also noticed what appeared to be crack cocaine in the front passenger seat. A field test confirmed that suspicion and indicated the substance to be crack cocaine.

**{¶16}** Trooper Lewis also stated that Trooper Lloyd searched the area where Whitehead had been seated and noticed that a trim piece on the driver's seat backrest appeared to have "been tampered with." Lloyd pulled the trim piece "back a little bit," and discovered a plastic bag in the back of the driver's seat that contained 57 grams of heroin worth around $6,000. Lewis also testified that 57 grams of heroin is not an amount to suggest personal use and, instead, "would be considered a trafficking amount."

**{¶17}** During Trooper Lewis' testimony, the state played a video of the traffic stop that included the vehicle search and the conversation between McKee and appellant while seated in the cruiser. McKee, who was extremely talkative, complained that the handcuffs hurt his wrists and, as Trooper Lloyd started to search the area where he found the heroin, McKee began to yell for the trooper. After the troopers discovered the heroin,

Lewis read appellant and McKee the *Miranda* warnings. Appellant asked why they were being arrested and Lewis informed appellant and McKee that they had discovered heroin in the vehicle. Appellant and McKee both responded with disbelief. Appellant claimed he did not know anything about the heroin, that the vehicle is a rental car, that he is a truck driver, and that the three occupants intended to visit "some females" in Kentucky. Lewis agreed with appellant that the vehicle is a rental car, but pointed out to McKee and appellant that appellant had rented the vehicle approximately one week earlier. McKee likewise denied any knowledge about the heroin and expressed surprise about its discovery in the car. McKee also repeated appellant's statements that they intended to visit "some females" and that appellant is a truck driver.

{¶18} The troopers then removed appellant from the back of Trooper Lewis' cruiser and placed Whitehead in the back seat with McKee. McKee continued to express surprise to Whitehead that the troopers discovered heroin and he stated he did not know how heroin ended up in the vehicle. McKee told Whitehead that they were merely traveling to Kentucky to visit "some females" and did not understand how they ended up in this predicament.

{¶19}  When the troopers spoke with Whitehead, he also claimed that he knew nothing about the heroin in the back of the driver's seat, even though the heroin had been stuffed inside the seat-back directly in front of him.

{¶20}  During appellant's cross-examination of Trooper Lewis, counsel asked whether Lewis had performed a "drug test" to see if appellant had "been using any cocaine."  Lewis stated that he did not.  Counsel also asked Lewis about McKee's and appellant's conduct while seated in the back of the cruiser and whether McKee was the individual who was "fidgeting, jumping around, [and] yelling."  Lewis responded affirmatively.  Counsel then questioned whether appellant was "sitting there quiet," and Lewis stated: "I wouldn't necessarily say quiet.  Every time he spoke he covered his mouth or whispered."  The trooper continued: "[E]very time he speaks he takes his shirt and covers up his mouth or would whisper."

{¶21}  Counsel next asked Trooper Lewis about appellant's response after he learned they found heroin in the vehicle and whether appellant told Lewis that appellant is a truck driver. Lewis stated that appellant mentioned earlier that he is a truck driver and that "[p]retty much throughout the whole stop someone had mentioned that he was a truck driver."

{¶22}  On redirect, the prosecutor asked Lewis whether appellant "offer[ed] to take a drug test for you," and Lewis responded that appellant did not.  Appellant's counsel then objected and the trial court overruled the objection.  The prosecutor followed up on appellant's counsel's questions regarding appellant's statement that he is a truck driver and, after the prosecutor asked Lewis whether appellant provided any information about his employer, appellant's counsel again objected.  The court overruled the objection and explained, "[y]ou asked the question on cross.  I'm going to let [the prosecutor] follow up with it."

{¶23}  Next, Trooper Lloyd testified that he observed a gap in the back of the driver's seat that "easily pull[ed] back," and inside he discovered a plastic bag that contained heroin.

{¶24}  The state also presented the testimony of Josie Keating, a rental car agency representative who rented the vehicle to Smith.  Keating stated that the rental car would have undergone an inspection before appellant took possession, and if the vehicle had any damage, it would have been noted on the inspection report.  Keating testified that appellant's inspection report indicated "no damage documented."  Keating also explained that appellant rented the vehicle on July 31,

2018, was scheduled for return on August 8, but appellant did not return the vehicle until August 25.  Also, during the time that appellant had the rental vehicle the mileage increased by 4,412 miles.

{¶25}  After Keating's testimony, the state called to the witness stand Scioto County Sheriff's Captain James Carter. Before Carter took the stand, however, appellant's counsel objected to Carter's expected testimony.  Appellant pointed out that the state intended to ask Carter about appellant's recorded jailhouse telephone conversations.  During those calls, appellant indicated he was not employed at the time Trooper Lewis stopped the vehicle, and that he had not been traveling to see "some females" in Kentucky.  Appellant's counsel asserted that appellant's statements about not being employed and his destination on the night of the traffic stop involved "other acts and they have nothing to do with the charges that he's facing here."  Counsel stated that, unless appellant chose to testify, the recorded phone calls should be inadmissible.  The prosecutor argued, however, that the statements are admissible under Evid.R. 801(D)(2).  Appellant's counsel then countered that, even if the statements are relevant, the probative value of the statements does not outweigh their prejudicial effect.

**{¶26}** After consideration, the trial court overruled appellant's objection. The court noted that the state presented evidence that appellant had stated he is a truck driver and that he intended to visit "some females." The court concluded that the phone calls should be admissible as appellant's own statements and informed the parties that it would give the jury a limiting instruction.

**{¶27}** Captain Carter testified he oversees jail operations, including telephone calls, and that he obtained recordings of two calls appellant made while in jail. The state played portions of each call at trial and, during the first call, appellant spoke with his grandfather who stated that he had spoken with appellant's lawyer and, when asked if appellant had a job, grandfather told the lawyer that appellant did not. Appellant stated in response that when he returned home he did plan to apply for a job "do[ing] a line haul for Chrysler."

**{¶28}** During the second call, appellant spoke with an individual he referred to as "cuz." Appellant informed the individual that he had been arrested and was being held in Portsmouth. Appellant stated that when Trooper Lewis "pulled my man over who was driving," appellant "was coming down to your crib." After Captain Carter's testimony, the state rested.

{¶29}  At this juncture, appellant and Whitehead moved for Crim.R. 29(A) judgments of acquittal and asserted that the state failed to present sufficient evidence to show that they knew about the heroin in the vehicle or that they constructively possessed the heroin.  The trial court overruled the motions.

{¶30}  On October 8, 2020, the jury found appellant guilty of trafficking and possessing heroin, both in an amount equal to or exceeding 50 grams.  The jury also found appellant guilty of possessing criminal tools.

{¶31}  On October 30, 2020, after the trial court merged the possession and trafficking counts, the court sentenced appellant to serve eight years in prison for trafficking in heroin.  The court also sentenced appellant to serve 180 days in jail for the possessing criminal tools, but ordered it be served concurrently with his prison sentence.  This appeal followed.

I

{¶32}  In his first assignment of error, appellant asserts that the trial court erred by admitting Trooper Lewis' statements that the troopers found cocaine residue on the passenger seat where appellant had been sitting and that they had also discovered marijuana residue.  Within his first assignment of error, appellant also argues that to allow the

state to fault appellant for the failure to produce proof he is employed as a truck driver and for the failure to offer to take a drug test violated his Fifth Amendment right against self-incrimination. Appellant further claims that to allow into evidence his recorded jailhouse telephone conversations violated his Fifth Amendment right.

{¶33} "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Consequently, "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66; *accord State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "An abuse of discretion is more than a mere error of law or judgment." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 91; *accord State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 75. Instead, "'[a] trial court abuses

its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.'" *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Moreover, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34.

**{¶34}** As a general rule, all relevant evidence is admissible. Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401 and Evid.R. 402. A trial court must, however, exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R.

403. A trial court has broad discretion to determine whether to exclude evidence under Evid.R. 403(A), and "'an appellate court should not interfere absent a clear abuse of that discretion.'" *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 40.

**{¶35}** Evid.R. 403(A) "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 50. Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2nd Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22.

**{¶36}** We also recognize that, to some degree, all relevant evidence may be prejudicial in the sense that it "tends to disprove a party's rendition of the facts" and, thus, "necessarily harms that party's case." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. Evid.R.

403(A) does not, however, "attempt to bar all prejudicial evidence." *Id.* Instead, the rules provide that only unfairly prejudicial evidence is excludable. *Id.* "'Evid.R. 403(A) speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.'" *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990). "'Unfair prejudice' does "not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis."'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir.1993). Unfairly prejudicial evidence is evidence that "might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3. It is evidence that arouses the jury's emotions, that "'evokes a sense of horror,'" or that "'appeals to an instinct to punish.'" *Id.* "'Usually, although not always, unfairly prejudicial evidence appeals to

the jury's emotions rather than intellect.'" *Id.* Thus, "[u]nfavorable evidence is not equivalent to unfairly prejudicial evidence." *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist.2001).

{¶37} In the case sub judice, we do not believe that the trial court abused its discretion by allowing the state to introduce evidence that, during the traffic stop, the troopers discovered marijuana and cocaine residue. First, when Trooper Lewis initially mentioned during his testimony that he discovered marijuana residue inside the plastic baggie that McKee dropped, appellant did not object. Appellant also did not object the next time Lewis mentioned the marijuana residue. Appellant did object when the prosecutor attempted to ask Lewis whether anyone later admitted that the bag contained marijuana. Appellant did assert that, because none of the individuals had been charged with a marijuana-related offense, the evidence was irrelevant. The trial court, however, overruled the objection.

{¶38} Here, because appellant did not object to Trooper Lewis' initial statements regarding the discovery of marijuana residue, appellant did not properly preserve any error concerning this testimony. Moreover, we do not believe that any error that the trial court arguably made constitutes plain

error.  Thus, we disagree with appellant that the trial court erred by allowing this testimony.

{¶39}  Next, we do not believe the trial court's decision to permit Trooper Lewis to testify that he found cocaine residue on the seat where appellant had been sitting constitutes an abuse of discretion.  Even if the evidence was prejudicial, it is not so unfairly prejudicial that the jury decided the case on an improper basis.  Instead, as we explain in our discussion of appellant's second assignment of error, the state presented ample evidence to support appellant's convictions.

{¶40}  We also do not believe that the trial court's decision to allow the state to ask Trooper Lewis questions on redirect to counter appellant's cross-examination constitutes an abuse of discretion.  During cross-examination, appellant's counsel asked Lewis whether appellant had stated that he is a truck driver and whether Lewis asked appellant to take a drug test to see if appellant had been using cocaine.  "Once defense counsel posed the question[s] * * *, he opened the door to further questioning on that issue."  *Portsmouth v. Wrage*, 4th Dist. Scioto No. 08CA3237, 2009-Ohio-3390, ¶ 34.  Appellant may not, therefore, complain on appeal that the trial court erred by allowing the state to raise those issues during Lewis' redirect examination.

*Id.*, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 74.

**{¶41}** Additionally, appellant challenges the testimony that appellant "whispered when he spoke or covered his mouth." We point out, however, that appellant's counsel elicited this testimony during Trooper Lewis' cross-examination. Thus, appellant invited any error that may have occurred. *E.g., State v. Hare*, 2018-Ohio-765, 108 N.E.3d 172, ¶ 45 (2d Dist.) (invited-error doctrine applies when defense counsel elicits allegedly improper testimony on cross-examination). The invited-error doctrine precludes a litigant from "'tak[ing] advantage of an error which [the litigant] invited or induced.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. Consequently, appellant cannot now challenge the testimony as improperly admitted.

**{¶42}** Appellant further contends that the trial court erred by allowing the state to admit into evidence his jailhouse phone calls. Although appellant appears to assert that the statements should be deemed inadmissible because "he did not make statements to the troopers," he does not specifically explain

the meaning of this assertion. Moreover, we observe that appellant and McKee both repeated that appellant is a truck driver and that they intended to visit "some females" in Kentucky. Thus, appellant's statements in the jailhouse calls are relevant to show that appellant was less than truthful during the traffic stop. Also, Evid.R. 801(D)(2)(a) explicitly allows statements offered against a party if the statement is "the party's own statement, in either an individual or a representative capacity." In the case sub judice, appellant made these statements and Evid.R. 801(D)(2)(a) allows the state to introduce the statements into evidence.

**{¶43}** Appellant also contends that admitting into evidence his jailhouse phone calls and allowing testimony regarding his demeanor during the traffic stop violated his Fifth Amendment right against self-incrimination.[4] However, numerous Ohio courts have determined that a defendant's demeanor, conduct, and statements that surround a criminal act are relevant to show a defendant's consciousness of guilt. *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 72 (a defendant's statements, "like other conduct following the completion of a

---

[4] The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."

crime, may be relevant evidence of consciousness of guilt"); *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 126 (defendant's "conduct and comments after the murders were relevant in reflecting his consciousness of guilt"); *State v. Williams*, 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."); *State v. A.W.M.*, 10th Dist. Franklin No. 18AP-523, 2020-Ohio-4707, ¶ 61 ("a prosecutor 'may comment' on matters such as a defendant's demeanor"); *State v. Hill*, 2018-Ohio-4800, 125 N.E.3d 158, ¶ 54 (11th Dist.), quoting *State v. Thompson*, 10th Dist. Franklin No. 05AP-1268, 2006-Ohio-3440, ¶ 21 ("exculpatory statements, 'when shown to be false or misleading, are circumstantial evidence of guilty consciousness and have independent probative value'"); *see generally Wilson v. United States*, 162 U.S. 613, 620-621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896) ("if the jury were satisfied, from the evidence, that false statements in the case were made by defendant * * *, they had the right * * * to regard false statements in explanation or

defense, made or procured to be made, as in themselves tending to show guilt").

**{¶44}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

**{¶45}** In his second assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence and that sufficient evidence does not support his convictions. Appellant contends that the state did not present any evidence to prove that he knowingly possessed or trafficked in the heroin found in the vehicle. Appellant argues that the evidence adduced at trial shows that he was merely present in the vehicle and lacked any knowledge about the heroin hidden in the driver's seat.

A

**{¶46}** Initially, we observe that "sufficiency" and "manifest weight" present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23 ("sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus. A claim of insufficient evidence invokes a due process

concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶47} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio

St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶48} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. "The question to be answered when a manifest-weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio

St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288 (Aug. 22, 1997). As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of

weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007- Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

**{¶49}** Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley. Accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (a judgment is not against the manifest weight of the evidence when "'"the greater amount of credible evidence"'" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983);

*accord McKelton* at ¶ 328.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶50}**  We also observe that, when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.  *E.g., State v. Waller*, 4th Dist. Adams No. 17CA1044, 2018-Ohio-2014, ¶ 30. Thus, a determination that the weight of the evidence supports a conviction is also dispositive of the issue of sufficiency.  *Id.*

B

**{¶51}**  Initially, we observe that, although the trial court found appellant guilty of trafficking and possessing heroin, the trial court merged the possession offense with the trafficking offense.  Thus, if sufficient evidence supports appellant's trafficking conviction, and if the conviction is not against the manifest weight of the evidence, an erroneous verdict on the

merged count would be harmless. *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 73; *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990); *State v. Campbell*, 4th Dist. Vinton No. 20CA723, 2021-Ohio-2482, ¶ 46; *see State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54 (because a trial court does not impose a sentence for merged offenses, a defendant is not "convicted" of merged offenses and thus there is no "conviction" on merged offenses for appellate court to vacate). Consequently, if we determine that sufficient evidence supports appellant's trafficking conviction and that conviction is also not against the manifest weight of the evidence, we need not address appellant's arguments regarding the possession offense.

{¶52} R.C. 2925.03(A)(2)[5] sets forth the essential elements of trafficking in drugs:

> No person shall knowingly
> * * *

---

[5] The trial court's sentencing entry and the verdict form do not conform to the trial court's oral decision to amend the indictment to charge a violation of R.C. 2925.03(A)(2). Instead, the court's entry and the verdict forms recite R.C. 2925.03(A)(1). None of the parties pointed out the discrepancy during the trial. The court did, however, instruct the jury in accordance with R.C. 2925.03(A)(2). Under these circumstances, we believe that the trial court committed a clerical error that it may correct at any time.

> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Additionally, R.C. 2923.03(A)(2), Ohio's complicity statute provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." "[T]o aid or abet is '"[t]o assist or facilitate the commission of a crime, or to promote its accomplishment."'" *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 27, quoting *State v. Johnson*, 93 Ohio St.3d 240,243, 754 N.E.2d 796 (2001), quoting Black's Law Dictionary 69 (7th Ed.1999).

**{¶53}** A conviction for aiding and abetting under R.C. 2923.03(A)(2) requires the state to prove, beyond a reasonable doubt, "that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.* at 245, quoting *State v. Pruett*, 28 Ohio

App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). However, "'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

**{¶54}** We further observe that the complicity statute does not require the state to charge the defendant with complicity. Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender: "[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense." R.C. 2923.03(F).

**{¶55}** In the case sub judice, the state charged appellant in terms of the principal offense. At trial, the state asserted that appellant also is guilty as an aider and abettor, and the trial court gave the jury the complicity instructions. We therefore will review whether the state presented sufficient evidence to establish either that (1) appellant aided and abetted the principal offender in trafficking in heroin, or (2) appellant trafficked in heroin as a principal offender.

**{¶56}** As we noted above, a complicity conviction requires the state to prove "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus. R.C. 2925.03(A)(2) requires that an offender act knowingly in committing the offense. Therefore, a complicity to trafficking in drugs conviction requires the state to demonstrate that the defendant knowingly "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." *Id.*

**{¶57}** R.C. 2901.22(B) defines when a person acts knowingly:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶58}** We observe that "'[t]he intent of an accused person dwells in his mind'" and that intent "'can never be proved by the direct testimony of a third person.'" *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v.*

*Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Rather, intent "'must be gathered from the surrounding facts and circumstances under proper instructions from the court.'" *Id.*, quoting *Huffman*, paragraph four of the syllabus; *e.g., State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143; *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). We further observe that "[i]ntention is a question of fact, and not one of law." *Koenig v. State*, 121 Ohio St. 147, 151, 167 N.E. 385 (1929); *State v. Wamsley*, 6th Dist. Butler No. CA2002-05-109, 2003-Ohio-1872, ¶ 18.

**{¶59}** To sustain an R.C. 2925.03(A)(2) trafficking conviction as a principal offender, the state must prove that a defendant had control over, *i.e.*, possessed, the illegal substance. *State v. Cabrales*, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008–Ohio–1625, ¶ 30, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the offender must 'hav[e] control over'" the illegal substance); *see State v. Floyd*, 7th Dist. No. 18 MA 0106, 2019-Ohio-4878, ¶ 21 (R.C. 2925.03(A)(2) requires "possession of the controlled substance, either constructive or actual").

**{¶60}** "Possession" is generally defined as "having control over a thing or substance, but may not be inferred solely from

mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Whether a person knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶61} "Possession * * * may be individual or joint, actual or constructive." *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976); *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *Fry* at ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 4th Dist.

Scioto No. 07CA3142, 2008-Ohio-1007, ¶ 34; *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 15.

{¶62} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *E.g., Brown* at ¶ 19; *see, e.g., State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"). "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary 221 (5 Ed.1979).

{¶63} Furthermore, to establish constructive possession, the state need not show that the defendant had "[e]xclusive control" over the contraband. *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 24, citing *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 WL 464632, *6 (Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 "states that illegal drugs must be in the sole or exclusive possession of the accused

at the time of the offense"). Instead, "'[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.'" *Howard* at ¶ 15, quoting *Farr* at *6. Thus, simply because others may have access in addition to the defendant does not mean that the defendant "could not exercise dominion or control over the drugs." *Tyler* at ¶ 24; *accord State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 75. We further note that multiple persons may have joint constructive possession of an object. *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 67; *Wolery*, 46 Ohio St.2d at 332, 329 ("[p]ossession * * * may be individual or joint" and "control or dominion may be achieved through the instrumentality of another").

**{¶64}** Moreover, "a factfinder can 'conclude that a defendant who exercises dominion and control over an automobile also exercises dominion and control over illegal drugs found in the automobile.'" *State v. Yakimicki*, 10th Dist. Franklin No. 12AP–894, 2013–Ohio–2663, ¶ 23, quoting *State v. Rampey*, 5th Dist. Stark No. 2004CA00102, 2006–Ohio–1383, ¶ 37; *accord State v. Walker*, 4th Dist. Athens No. 16CA26, 2017-Ohio-8814, ¶ 27.

{¶65}  In the case sub judice, we believe that the prosecution adduced sufficient evidence at trial that, if believed, established that appellant knowingly transported, and exercised dominion and control over, the heroin found in the back of the driver's seat, or that appellant knowingly aided or abetted the principal offender in committing the offense. Appellant rented the vehicle, apparently one week before the troopers discovered the heroin hidden inside the vehicle, and thus had dominion and control over the vehicle.  His dominion and control permitted an inference that he also had dominion and control over the heroin discovered inside the vehicle. Furthermore, the rental car representative stated that rental vehicles undergo a thorough inspection between rentals and any vehicle damage would have been noted on appellant's inspection report.  When appellant rented the vehicle, the inspection did not document any damage.  When the troopers stopped the vehicle, however, Trooper Lloyd noticed visible damage to the back of the driver's seat.  From this testimony, the jury could have reasonably inferred that the damage did not exist when appellant rented the car and that appellant, having dominion and control of the vehicle, is responsible for the damage, or that someone under appellant's direction is responsible for the damage.

Likewise, this testimony allowed the jury to reasonably infer that appellant, or one of his two companions, stuffed the heroin inside the back of the driver's seat.

{¶66} The evidence additionally shows that the jury could have inferred that appellant knew that the vehicle contained more than 50 grams of heroin. Appellant, who denied knowing anything about the heroin, also stated that he is a truck driver and that he and his companions traveled from Michigan to visit "some females" in Kentucky. The state, however, later played appellant's recorded jailhouse phone conversations in which he stated that (1) he and his two companions had been traveling to Kentucky when Trooper Lewis stopped the vehicle, and (2) he was not employed at the time. Both statements tend to show that appellant had not been truthful and are evidence of consciousness of guilt.

{¶67} Moreover, the jury watched the video evidence of the traffic stop, including appellant's demeanor while seated in the back of Trooper Lewis' patrol cruiser. Because Lewis testified that appellant covered his mouth when he spoke and whispered, the jury could have reasonably determined that appellant's conduct further indicated his guilt. The jury also had the opportunity to view appellant's demeanor shortly after the

troopers revealed that they had discovered heroin in the vehicle and could have determined that the combination of appellant's and McKee's words and demeanor indicated that they may not be telling the truth.  The jury also could have considered the evidence and determined that appellant, McKee, and Whitehead acted in concert to concoct a cover story that Smith is a truck driver and the three were simply on their way to Kentucky to visit "some females."

{¶68}  After our review, we believe that when viewed in a light most favorable to the prosecution, the evidence adduced at trial supports the conclusion that appellant knowingly transported heroin, or that he assisted, facilitated, or supported the principal offender to transport the heroin.  Here, appellant was not simply an innocent bystander who, by mere happenstance, found himself at a crime scene, but with no connection to the crime other than being present.  Rather, the evidence established that appellant and his companions traveled from Michigan in appellant's rented vehicle that contained a large amount of heroin concealed in the back of the driver's seat.  Appellant's actions, statements and conduct prior, during and subsequent to the traffic stop established his involvement and culpability in this criminal enterprise.  Once again,

criminal intent may be inferred from circumstantial evidence, including presence, companionship and conduct that occurred before, during and after the commission of a criminal offense. Furthermore, as we pointed out supra, multiple persons may have simultaneous joint constructive possession of an object.

{¶69} Therefore, based upon all of the evidence presented at trial, a rational trier of fact could have found that appellant knowingly trafficked in heroin or that he knowingly aided and abetted the principal offender in committing the offense of trafficking in heroin. Consequently, we believe that the record contains sufficient evidence to support appellant's trafficking conviction.

{¶70} Furthermore, we do not agree with appellant that the state rested its case upon the discovery of marijuana and cocaine residue. Instead, as we explained above, the state presented ample evidence to prove appellant's guilt for trafficking in heroin, either as a principal offender or as an aider and abettor.

{¶71} For similar reasons, we do not believe that the evidence weighs heavily against appellant's conviction for complicity to trafficking in heroin. The state presented ample circumstantial evidence to show that appellant knowingly

trafficked in heroin or that he knowingly aided or abetted the principal offender in committing the offense. The jury obviously credited the state's theory of the case and we are unable to conclude that the jury committed a manifest miscarriage of justice by convicting appellant.[6]

{¶72} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶73} In his third assignment of error, appellant asserts that his conviction for possessing criminal tools contradicts his trafficking and possession convictions. In particular, appellant argues that because the jury found that appellant did not intend to use the vehicle to commit a felony offense, "it is inconceivable that the drugs found concealed in the vehicle where [sic] knowingly transported or possessed." Appellant, however, does not cite any authority to support his argument.

{¶74} Under App.R. 16(A)(7), an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for

---

[6] Appellant did not raise a specific argument that his possessing criminal tools conviction is against the manifest weight of the evidence, or that sufficient evidence does not support it. We therefore do not address it.

review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Appellate courts will not perform independent research to create an argument for a litigant. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("'"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *accord State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, ¶ 57. "[W]e cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor.  That's not how an adversarial system of adjudication works."  *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013).  In view of appellant's lack of authority in support of his position, we reject his argument that the possessing criminal tools conviction is inconsistent with his trafficking conviction.  *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271,

2011-Ohio-2638, 951 N.E.2d 751, ¶ 14 (failure to cite legal

authority or present an argument that a legal authority applies

on these facts and was violated * * * is grounds to reject [a]

claim); *Robinette v. Bryant*, 4th Dist. Lawrence No. 14CA28,

2015-Ohio-119, ¶ 33 ("It is within our discretion to disregard

any assignment of error that fails to present any citations to

cases or statutes in support.").  We further note that it is

well-established that "'[t]he several counts of an indictment

containing more than one count are not interdependent and an

inconsistency in a verdict does not arise out of inconsistent

responses to different counts, but only arises out of

inconsistent responses to the same count.'"  *State v. Ford*, 158

Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 347, quoting

*State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978),

paragraph two of the syllabus.

**{¶75}** Accordingly, based upon the foregoing reasons, we

overrule appellant's third assignment of error.

IV

**{¶76}** In his fourth assignment of error, appellant asserts

that he did not receive effective assistance of counsel.  In

particular, appellant contends that his trial counsel was

ineffective for (1) withdrawing his motion to suppress evidence,

(2) failing to file a motion for separate trials, and (3) failing to object to the state's motion to amend the indictment.

A

**{¶77}** The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

**{¶78}** To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶

85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶79} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶80} Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the

circumstances."'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶81} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-

6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

**{¶82}** To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require a defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d

985 (2008) (prejudice may be presumed in limited contexts, none of which are relevant here).

{¶83} As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (argument that is purely speculative cannot serve as the basis for an ineffectiveness claim). We further note that counsel's failure to file a futile or frivolous motion "'cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial.'" *State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 12, quoting *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 33.

B

{¶84} Appellant first argues that trial counsel performed ineffectively by withdrawing his motion to suppress evidence

because his motion had a reasonable probability of success. Appellant asserts that Trooper Lewis did not have a lawful basis to stop or to search the vehicle. Appellant also argues that the trial court would have suppressed certain statements appellant made during the traffic stop if counsel had not withdrawn the motion to suppress evidence. In particular, appellant alleges that he made statements without proper *Miranda* warnings and that they should have been inadmissible.

**{¶85}** Initially, we point out that trial counsel's "'failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *accord State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 126. "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35. "'Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of

proving that his attorney violated an essential duty by failing to file the motion.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'" *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 13; *see State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 12, quoting *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 33 ("'[t]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial'").

**{¶86}** In the case at bar, as we explain below, we do not believe that appellant has shown a valid basis to suppress the evidence discovered during the traffic stop. Thus, even if some evidence in the record might support a suppression motion, trial counsel reasonably could have decided that filing the motion would have been a futile act. Appellant has not, therefore,

shown that trial counsel violated an essential duty by failing to file a motion to suppress evidence.

C

**{¶87}** The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Gullett*, 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992). "[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98.

**{¶88}** A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Prouse*, 440 U.S. at 653. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Id.* An officer's decision

to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Whren*, 517 U.S. at 810 (citations omitted); *accord State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). Law enforcement officers also may stop a vehicle if they have reasonable suspicion "that criminal activity '"may be afoot."'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19 (officer may "make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity").

**{¶89}** Courts that are reviewing whether an officer had a reasonable suspicion or probable cause to stop a vehicle must consider the "totality of circumstances" as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The totality-of-

the-circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273, quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

1

**{¶90}** Appellant first argues that Trooper Lewis did not have a reasonable suspicion to stop the vehicle.[7] Appellant asserts that the trooper did not articulate any facts to suggest that the driver of the vehicle committed a traffic violation. Appellant thus contends that in the absence of a traffic violation, Lewis lacked any reasonable suspicion to stop the vehicle.

**{¶91}** Law enforcement officers need not necessarily observe a distinct traffic violation in order to conduct an investigative stop of an automobile. *See State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 21-24. In *Hawkins*, for example, the court held that an officer possessed

---

[7] Passengers in a vehicle, as well as the driver, have standing to challenge the constitutionality of a traffic stop. *Brendlin v. California*, 551 U.S. 249, 259, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *State v. Carter*, 69 Ohio St.3d 57, 63, 630 N.E.2d 355 (1994).

reasonable suspicion to stop a vehicle when the color of the vehicle did not match the color listed on the vehicle's registration and when the officer stated that, "in his experience, the color discrepancy could signify that the vehicle either was stolen or had an illegal license plate." *Id.* at ¶ 24. The court explained that even though "color discrepancy" may not be a crime and could have "an innocent explanation," this color discrepancy may nevertheless give an officer reasonable suspicion to believe that criminal activity is afoot. *Id.* at ¶ 23. The court reasoned:

> To assign noncriminal behavior no weight would "seriously undercut the 'totality of the circumstances' principle which governs the existence *vel non* of 'reasonable suspicion.'" [*Arvizu*, 534 U.S.] at 274-275. Behavior and circumstances that are noncriminal by nature may "be unremarkable in one instance * * * while quite unusual in another." *Id.* at 276, 122 S.Ct. 744. An officer is "entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants." *Id.*

*Id.* at ¶ 23. Thus, the totality of the circumstances inquiry allows officers to consider all of the surrounding circumstances -- even seemingly innocuous ones -- when determining whether they have reasonable suspicion to believe that criminal activity may be afoot. *See Arvizu*, 534 U.S. at 275-276 (a vehicle's

deceleration may give an officer reasonable suspicion to stop a vehicle depending upon the totality of the circumstances present in the case).

**{¶92}** In the case sub judice, Trooper Lewis articulated several factors to support his belief that criminal activity might be afoot. First, Lewis noted that the vehicle was a rental car. The trooper explained that, in his experience, individuals who transport drugs commonly use rental cars as a means to avoid detection. Additionally, Lewis observed that the vehicle (1) failed to maintain a safe distance from the vehicle traveling in front of it, (2) dropped its speed to 40 miles per hour while in a 55-mile-per-hour zone, and (3) made an unexpected lane change. The totality of the circumstances, therefore, would support a finding that Lewis possessed a reasonable suspicion that criminal activity may be afoot, and probable cause to believe that a traffic violation had occurred.

**{¶93}** Consequently, we do not agree with appellant that Trooper Lewis lacked a lawful basis to conduct the traffic stop. Trial counsel thus was not ineffective for failing to file a motion to suppress evidence on this basis.

2

**{¶94}**  To the extent appellant contends that trial counsel performed ineffectively by failing to file a motion to suppress evidence based upon Trooper Lewis' pat-down search of McKee, appellant lacks standing to challenge the search of McKee. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("'Fourth Amendment rights are personal rights which * * * may not be vicariously asserted'").  Instead, "defendants may only claim the benefits of the exclusionary rule if their Fourth Amendment rights have been violated."  *State v. Horsley*, 4th Dist. Scioto No. 12CA3473, 2013-Ohio-901, ¶ 16.

**{¶95}**  Consequently, in light of the fact that appellant lacks standing to challenge the legality of Trooper Lewis' search of the driver, trial counsel was not ineffective for failing to file a motion to suppress evidence on this basis.

3

**{¶96}**  Appellant further claims that his suppression motion would have had a reasonable probability of success because the troopers did not observe any unlawful activity to permit them to search the vehicle.  We do not agree.

**{¶97}** When a law enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement. *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000), citing *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *see State v. Lang*, 117 Ohio App.3d 29, 36, 689 N.E.2d 994 (1st Dist.1996) (discovery of cocaine in a vehicle in plain view provided probable cause to search the remainder of the vehicle for contraband). Furthermore, "Ohio courts have held that the production of drugs by an occupant of a vehicle independently provides an officer with additional probable cause to believe that the vehicle contains evidence of contraband." *State v. Donaldson*, 6th Dist. Wood No. WD-18-034, 2019-Ohio-232, ¶ 29; *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 32-33 (once driver admitted he possessed marijuana, officers obtained probable cause to search vehicle).

**{¶98}** Additionally, courts have held that the observance of marijuana "residue" or "flakes" will give officers "probable cause to search the entire vehicle." *State v. Gordon*, 5th Dist. Fairfield No. 14-CA-13, 2014-Ohio- 5027, ¶ 25 ("marijuana flakes

in plain view on [a] driver's lap"); *State v. Stone*, 11th Dist. No.2007-P-0048, 2008-Ohio-2615, ¶ 26, citing *United States v. Moxley*, 6th Cir. No. 99-3453, 2000 WL 1234320, *3 (Aug. 23, 2000) ("marijuana residue" found in a vehicle's interior "sufficient to establish not just reasonable suspicion, but probable cause to detain the suspect and to conduct a full search of his car"). *Contra State v. Grubbs*, 2017-Ohio-41, 80 N.E.3d 1075, ¶ 39 (6th Dist.) (marijuana flakes on an individual does not give officer probable cause to search the person).

**{¶99}** In the case at bar, Trooper Lewis testified that McKee dropped a plastic baggie that contained marijuana residue. This discovery gave the troopers probable cause to believe that the vehicle contained contraband. *E.g., Donaldson*; *Gordon*; *Young*. Thus, the troopers could properly search the vehicle.

**{¶100}** Consequently, we do not agree with appellant that trial counsel performed ineffectively by withdrawing the suppression motion because counsel reasonably could have determined that the motion was futile.

4

**{¶101}** Appellant next argues that trial counsel should have pursued a claim that some of his statements were obtained in violation of *Miranda*.

**{¶102}** The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In order to safeguard a suspect's Fifth Amendment privilege against self-incrimination, law enforcement officers that seek to perform a custodial interrogation must warn the suspect "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479.  In the absence of these warnings, a suspect's incriminatory statements made during a custodial interrogation are inadmissible at trial.  *Michigan v. Mosley*, 423 U.S. 96, 99–100, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (footnote and citation omitted) ("[U]nless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary."); *Miranda*, 384 U.S. at 479 (no evidence stemming from result of

custodial interrogation may be used against defendant unless procedural safeguards employed); *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 113 ("the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.").

{¶103} It is important to recognize that the *Miranda* rule does not protect every person who is subjected to police questioning; rather, the rule protects individuals subjected to "custodial interrogation." *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444; *see also Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (*Miranda* protection attaches "only where there has been such a restriction on a person's freedom as to render him in 'custody' "). Thus, "the requirement that police officers administer *Miranda* warnings applies only when a suspect is

subjected to both custody and interrogation." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24.

**{¶104}** "Determining whether questioning is 'a custodial interrogation requiring *Miranda* warnings demands a fact-specific inquiry that asks whether a reasonable person in the suspect's position would have understood himself or herself to be in custody while being questioned.'" *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 57, quoting *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 21. We observe that the custody determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Henry*, 12th Dist. Preble No. CA2008-04-006, 2009-Ohio-434, ¶ 13. "[T]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

**{¶105}** Moreover, determining whether an individual "has been 'interrogated,' * * * focuses on police coercion, and whether the suspect has been compelled to speak by that coercion." *State v. Tucker*, 81 Ohio St.3d 431, 436, 692 N.E.2d 171 (1998).

An individual may feel compelled to speak not only "by express questioning, but also * * * by the 'functional equivalent' of express questioning, i.e., 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.*, quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Consequently, a suspect who volunteers information without being asked any questions is not subject to a custodial interrogation and is not entitled to *Miranda* warnings. *Id.* at 438; *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997); *accord Miranda*, 384 U.S. at 478 (stating that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"). "Moreover, there is no requirement that officers interrupt a suspect in the course of making a volunteered statement to recite the *Miranda* warnings." *Tucker*, 81 Ohio St.3d at 438. Moreover, roadside questioning of a motorist detained pursuant to a routine traffic stop ordinarily does not constitute "custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). If, however, the motorist "thereafter is

subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.*; *accord State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985.

{¶106} In the case sub judice, appellant's brief does not identify precisely when the *Miranda* violation allegedly occurred, or what statements allegedly were obtained in violation of *Miranda*. We further note that the record shows that Trooper Lewis administered Miranda warnings before he revealed that the troopers had discovered heroin in the vehicle. At that point, appellant volunteered that he is a truck driver and that he and his companions were driving to Kentucky to visit "some females." Appellant has not, therefore, shown that his suppression motion had a reasonable probability of success.

{¶107} Consequently, we disagree with appellant that trial counsel was ineffective for withdrawing the motion to suppress.

D

{¶108} Appellant also asserts that trial counsel was ineffective for failing to file a motion for separate trials. Appellant claims that by holding a joint trial, Whitehead and appellant "both were able to assert their Fifth Amendment rights against self-incrimination," and the failure to seek separate

trials deprived appellant of his right to cross-examine Whitehead.

**{¶109}** Crim.R. 8(B) specifies that multiple defendants may be joined in a single indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct."

**{¶110}** As a general rule, the law favors joinder of defendants and the avoidance of multiple trials. *E.g., State v. Gordon,* 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 18. Joint trials "conserve[] judicial and prosecutorial time, lessen[] the not inconsiderable expenses of multiple trials, diminish[] inconvenience to witnesses, and minimize[] the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980); *accord Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts'").

{¶111} If, however, joinder prejudices a defendant, Crim.R. 14 gives a trial court discretion to sever the trials. Crim.R. 14 states: "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * for trial together * * *, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."

{¶112} To establish that a trial court's refusal to sever a trial constitutes an abuse of discretion, a defendant must establish that holding combined trials prejudiced the defendant's rights. *Gordon* at ¶ 21; *State v. Schaim* , 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). The test is

> whether a joint trial is so manifestly prejudicial
> that the trial judge is required to exercise his or
> her discretion in only one way—by severing the trial.
> * * * A defendant must show clear, manifest and undue
> prejudice and violation of a substantive right
> resulting from failure to sever.

*State v. Schiebel*, 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990), quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir. 1989. Moreover, a defendant must provide "the trial court with sufficient information so that it [can] weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶113} We observe that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Additionally, "a trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative." *State v. Payne*, 10th Dist. Franklin App. No. 02AP-723, 2003-Ohio-4891.

{¶114} In the case sub judice, appellant did not explain precisely how being unable to cross-examine Whitehead prejudiced his defense. Appellant did not identify testimony that he might have been able to elicit in a separate trial, and whether that testimony would have led to a different outcome. Here, appellant can only speculate.

{¶115} Therefore, we do not agree with appellant that trial counsel performed ineffectively for the failure to file a motion for separate trials.

E

{¶116} Appellant further asserts that trial counsel was ineffective for failing to object to the state's motion to amend the indictment.

{¶117} First, we note that because appellant specifically agreed to the amendment, appellant invited any error that may

have occurred.  The invited-error doctrine precludes a litigant

from "'tak[ing] advantage of an error which [the litigant]

invited or induced.'"  *State v. Ford*, 158 Ohio St.3d 139, 2019-

Ohio-4539, 140 N.E.3d 616, ¶ 279, quoting *Hal Artz Lincoln-*

*Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio

St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus.

The doctrine generally applies "'when a party has asked the

court to take some action later claimed to be erroneous, or

affirmatively consented to a procedure the trial judge

proposed.'"  *Id.*, quoting *State v. Campbell*, 90 Ohio St.3d 320,

324, 738 N.E.2d 1178 (2000).  In the criminal context, the

doctrine prevents a defendant from making "'an affirmative * * *

decision at trial and then complain[ing] on appeal that the

result of that decision constitutes reversible error.'"  *State*

*v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 7,

quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th

Cir. 2003); *accord State v. Brunner*, 4th Dist. Scioto No.

18CA3848, 2019-Ohio-3410, ¶ 15.

{¶118} Assuming, arguendo, that appellant had not invited any

error, as we explain below we do not believe that trial counsel

was ineffective for failing to object to the amendment.

**{¶119}** Crim.R. 7(D) provides that a court may amend an indictment "at any time before, during, or after a trial * * *, provided no change is made in the name or identity of the crime charged." Thus, an amendment is "proper when the amendment [does] not change the penalty or the degree of the offense." *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 6. Moreover, "[a]s long as the state complies with Crim.R. 7(D), it may cure a defective indictment by amendment, even if the original indictment omits an essential element of the offense with which the defendant is charged." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 15.

**{¶120}** In the case sub judice, appellant did not argue that the amendment changed the penalty or the degree of the offense. Moreover, the record does not support such an argument. Although the amendment changed the elements of the offense from "sell or offer" to sell to "ship, transport, or deliver," the name of the offense and the penalty remained the same before and after the amendment. Consequently, trial counsel did not need to raise a meritless argument. *See State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 70 (amendment that simply changes certain element of offense without changing the

name of the offense or the penalty does not constitute an improper amendment under Crim.R. 7(D)).

                                    F

{¶121} Appellant also claims that counsel's failures constitute plain error. However, because that counsel was not ineffective, appellant's plain-error argument is without merit.

{¶122} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

                                    V

{¶123} In his fifth assignment of error, appellant asserts that the trial court erred by sentencing him to serve eight years in prison. In particular, appellant argues that the trial court penalized him after he rejected the state's plea offer and chose instead to exercise his right to a jury trial.

{¶124} When reviewing felony sentences, appellate courts apply the standard of review outlined in R.C. 2953.08(G)(2). *State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, ¶ 12, citing *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 13. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate

and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

{¶125} A defendant bears the burden to establish, by clear and convincing evidence, (1) that a sentence is either contrary to law or (2) that the record does not support the specified findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 48; *State v. Shankland*, 4th Dist. Washington Nos. 18CA11 and 18CA12, 2019-Ohio-404, ¶ 20. "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶126} We additionally observe that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42. Furthermore, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Consequently, appellate courts cannot review a felony sentence when "the appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when fashioning that sentence." *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42; *accord State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13 ("In light of *Jones*, assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error."); *State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 30.

{¶127} In the case sub judice, appellant did not argue that the record fails to support the specified findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). Instead, he appears to challenge the trial court's decision not to impose the shortest prison term. Appellant contends that he has no criminal record and that "no aggravating circumstances" exist. R.C. 2953.02(G)(2) does not, however, allow this court to independently review the record to determine whether the trial court chose an appropriate sentence. *See Jones, supra*; State v. Hughes, 4th Dist. Adams No. 21CA1127, 2021-Ohio-3127, ¶ 41 ("R.C. 2953.08(G)(2) does not give appellate courts broad authority to review sentences to determine if they are supported by the record"). We therefore are unable to consider whether the record supports the trial court's decision to impose an eight-year prison term. We may, however, review whether appellant's sentence is "contrary to law."

{¶128} "[A] sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d. 431, ¶ 8, citing *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989), and *Bordenkircher v. Hayes*, 434

U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("'[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *.'"). Thus, a trial court must not act vindictively when it imposes a sentence upon a defendant who chooses to maintain his not guilty plea and proceed to trial.

**{¶129}** We further note "there is not a presumption of vindictiveness when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term." *Id.* at ¶ 3. Instead, the defendant must establish that "the judge acted vindictively." *Id.*

**{¶130}** Appellate courts review vindictive-sentence claims by beginning "with the presumption that the trial court considered the appropriate sentencing criteria." *Id.* at ¶ 19. Then, courts "review the entire record—the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing—to determine whether there is evidence of actual vindictiveness." *Id.* A reviewing court "will reverse the sentence only if [the court] clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the

trial court."  *Id.*, citing R.C. 2953.08(G)(2); *State v. Taylor*, 4th Dist. No. 16CA1028, 2017-Ohio-4395, 93 N.E.3d 1, ¶ 25.

**{¶131}** In the case sub judice, we do not believe that the record clearly and convincingly shows that the trial court's eight-year prison sentence is a result of actual vindictiveness. Appellant does not point to any statement in the record or any other indication to suggest that the court acted vindictively as a result of appellant's decision to reject the plea offer and to proceed to trial.  As the *Rahab* court noted, "there are legitimate reasons a defendant who rejects a plea may end up receiving a harsher sentence."  *Id.* at ¶ 17.  The court explained:

> Acceptance of responsibility is an appropriate sentencing consideration.  Moreover, a plea bargain is, after all, a bargain.  In the bargain, the prosecutor achieves certain benefits: a forgoing of the risk that the defendant will be found not guilty, relief from the burden of trying the case and a concomitant ability to devote prosecutorial resources to other cases, and limitations on the defendant's right to appeal an agreed sentence, see R.C. 2953.08(D)(1).  In return, the prosecutor is able to offer the defendant certain sentencing considerations. Both sides exchange risk about the outcome for an enhanced degree of certainty.  For the bargain to be worth anything to the defendant (at least in most cases), the defendant must have a reasonable probability of receiving a more lenient sentence than he would following trial and conviction.

*Id.* (citation omitted).

{¶132} We therefore reject appellant's argument that the trial court acted vindictively by imposing an eight-year prison sentence. Instead, the trial court reasonably could have determined, after hearing all of the evidence presented at trial, that appellant's conduct warranted an eight-year prison term.

{¶133} Appellant also appears to assert that the trial court erred by imposing an eight-year prison sentence without stating, on the record or otherwise, that the court considered a presentence investigation report. We observe, however, that a presentence investigation report is only required if a trial court imposes community control. Crim.R. 32.2 states: "Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation and report before imposing community control sanctions or granting probation." R.C. 2951.03(A)(1) specifically states that "[n]o person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court." *Accord State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 15 ("the plain text of Crim.R. 32.2 and R.C.

2951.03(A)(1) also places an unavoidable duty on the trial court to obtain a presentence investigation report in every felony case in which a prison sentence is not imposed"); *State v. Dennis*, 2017-Ohio-4437, 93 N.E.3d 277, ¶ 25 (8th Dist.) ("a presentence investigation report is not required if the court imposes a prison term").

**{¶134}** In the case at bar, the trial court imposed a prison term.  Thus, assuming, arguendo, that the trial court did not consider a presentence investigation report as appellant alleges, no error occurred.

**{¶135}** We further note that appellant alleges that the trial court participated in the plea negotiations.  However, even if the record supports appellant's assertion, and even if the court arguably erred by doing so, appellant does not explain how the court's participation impacted the outcome of the proceedings or otherwise affects our analysis of whether his sentence is contrary to law.

**{¶136}** Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.